UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TERRY JENNINGS-MOLINE,<br><br>Plaintiff,<br><br>v.<br><br>DEPUY ORTHOPAEDICS, INC.; DEPUY PRODUCTS, INC.; DEPUY INTERNATIONAL LIMITED; JOHNSON & JOHNSON COMPANY; and JOHNSON & JOHNSON SERVICES, INC.,<br><br><br>Defendants. | Case No. 2:23-cv-00031-AKB<br><br>**MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

Pending before the Court is the Motion for Summary Judgment of Defendants Johnson & Johnson Company; Johnson & Johnson Services, Inc.; DePuy Products, Inc.; DePuy Orthopaedics, Inc.; and DePuy International Limited.  (Dkt. 33).  The Court heard oral argument on October 25, 2023, and took the motion under advisement.  For the reasons discussed below, the Court grants the motion in part and denies it in part.

## II. BACKGROUND

In January 2016, Terry Jennings-Moline "underwent a left total hip arthroplasty surgery . . . to correct left hip arthritis secondary to developmental hip dysplasia."  (Dkt. 4 at ¶ 2.3).  As part of her hip surgery, Dr. Douglas McInnis implanted a Pinnacle hip implant which included an AltrX polyethene acetabular liner ("AltrX liner").  (*Id.*)

In February 2018, Jennings-Moline "experienced a sudden painful sensation in her left hip and began noticing an audible squeaking in her hip" while walking.  (*Id.* at ¶ 2.4).  She returned to Dr. McInnis, who performed a revision surgery.  (*Id.* at ¶¶ 2.4, 2.5).  Dr. McInnis concluded the AltrX liner had dissociated and replaced the liner within the existing hip implant hardware.  (*Id.* at ¶ 2.5).

In April 2019, Jennings-Moline filed this action in state court against Defendants, alleging numerous claims based on the AltrX liner's dissociation and the resulting revision surgery.  (*See* Dkt. 4).  Defendants removed Jennings-Moline's action to federal court.  (Dkt. 1).  Thereafter, in August 2019, Jennings-Moline underwent a second revision surgery after the squeaking returned in her hip.  (Dkt. 33-1 at p. 11).  During this revision, Dr. McInnis' replaced the AltrX liner with a liner manufactured by another company.  (*Id.*).

In February 2020, the United States Judicial Panel on Multidistrict Litigation transferred Jennings-Moline's case under 28 U.S.C. § 1407 to the Northern District of Texas for inclusion in the coordinated or consolidated pretrial proceedings for the Pinnacle hip implant products liability litigation.  (Dkt. 15).  *See In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, No. 3:11-CV-1941-K, 2019 WL 13193930, at *1 (N.D. Tex. Jan. 10, 2019).  In January 2023, the Panel remanded Jennings-Moline's case back to the District of Idaho.  (*See* Dkts. 50, 51).  Before remand, Defendants deposed Dr. McInnis on December 9, 2022 (Dkt. 44-2 at p. 29),[1] and on December 16, Defendants moved for summary judgment on all Jennings-Moline's claims. (Dkt. 33).  Subsequently, on February 9, 2023, Defendants deposed Young.

---

[1]     Defendants assert in their summary judgment brief that "the doctor who performed Ms. Jennings-Moline's surgery has provided no testimony in her case." (Dkt. 33-1 at p. 8).  The record, however, shows Defendants deposed Dr. McInnis on December 9, 2022.  (Dkt. 44-2 at p. 29).

### III.  LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).  The trial court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted).  In considering a motion for summary judgment, the court must "view[] the facts in the non-moving party's favor."  *Id.*  To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in the respondent's favor."  *Id.*  (citation omitted).

The trial court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather, the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment.  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

### IV. ANALYSIS

#### A.    Idaho Products Liability Law

In addressing Jennings-Moline's claim under diversity jurisdiction, this Court applies Idaho products liability law.  Idaho law recognizes three general categories of strict liability in

product liability cases, including manufacturing flaws, design defects, and failure to warn.  *Toner v. Lederle Labs., a Div. of Am. Cyanamid Co.*, 732 P.2d 297, 305 (Idaho 1987).  Regardless, Idaho courts do not distinguish between design and manufacturing defects.  *Rindlisbaker v. Wilson*, 519 P.2d 421, 428 (Idaho 1974) (noting "we fail to see any logical reason to distinguish between the two"); *see also Wilson v. Amneal Pharms., L.L.C.*, No. 1:13-CV-00333-CWD, 2013 WL 6909930, at *8 (D. Idaho Dec. 31, 2013) (noting no distinction between design and manufacturing defect).  "[T]he term 'defect' is not susceptible to a single definition and must be considered on a case-by-case basis," but generally, a product is defective if it does not meet an ordinary consumer's reasonable expectation of safety.  *Black v. DJO Global, Inc.*, 488 P.3d 1283, 1287 (Idaho 2021).

A plaintiff in a product liability case has the burden of proving:  (1) the product injured him; (2) the injury was the result of a defective or unsafe product; and (3) the defect existed when the product left the manufacturer's control.  *Id.*  A plaintiff may prove a product is defective by showing either:  "(1) direct evidence of an identifiable, specific defect; or (2) evidence of a malfunction of the product and the absence of evidence of abnormal use and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant."  *Id.*  A plaintiff "need not exclude every possible cause but only reasonably likely causes."  *Grunig v. Johnson & Johnson*, No. 1:18-CV-00111-BLW, 2019 WL 6868956, at *7 (D. Idaho Dec. 16, 2019) (citing *Farmer v. Int'l Harvester Co.*, 553 P.2d 1306, 1313 (Idaho 1976)).  "Regardless of the theory under which recovery is sought in a products liability action, a plaintiff must establish that the injury is causally related to defendant's act or omission."  *Watson v. Navistar Int'l Transp. Corp.*, 827 P.2d 656, 674 (Idaho 1992).

Proving a defect by showing a malfunction and the absence of other reasonably likely causes is referred to by Idaho courts as the malfunction theory.  *Black*, 488 P.3d at 1287.  "Proof

of a product 'malfunction' is circumstantial evidence of a product 'defect' [because] a product will not ordinarily malfunction with the reasonable contemplation of the consumer in the absence of a defect." *Id.* The Idaho Supreme Court has "declined to require expert testimony in malfunction theory cases." *Id.* Instead, the Court requires "the product at issue must be of a type which permits a jury to infer that an injury would not have occurred had there not been a defect attributable to the manufacturer." *Id.* at 1288. A plaintiff, however, does not need "to prove a specific defect to carry his burden of proof." *Farmer*, 553 P.2d at 1311.

### 1.    Design or Manufacturing Defect

Defendants assert Jennings-Moline's defect claim fails because she does not have evidence of a defect. (Dkt. 33-1 at pp. 13-16). In support, Defendants offer two arguments. First, they argue the testimony of Jennings-Moline's expert witness, Nathan P. Young, is excludable under Federal Rule of Evidence 702. Although the Court has excluded some of Young's opinions and Jennings-Moline has conceded others were inadmissible, the Court has ruled Young may testify regarding the data he relied on and that data's suggestion of a design defect. (Dkt. 67). Moreover, the Idaho Supreme Court has "declined to require expert testimony in malfunction theory cases." *Black*, 488 P.3d at 1287.

Second, Defendants argue Jennings-Moline's defect claim fails because she does not have evidence of "a unique mishap in the manufacturing process [causing her specific AltrX] liner and associated femoral heads to deviate from their intended designs or from other identical products." (Dkt. 33-1 at p. 10). As noted above, however, Idaho law does not distinguish between manufacturing and design defects, and under the malfunction theory, a plaintiff may prove a product is defective by showing circumstantial evidence the product malfunctioned and the absence of evidence of abnormal use or reasonably likely secondary causes. *Black*, 448 P.3d at

1287 (discussing malfunction theory); *Grunig*, 2019 WL 6868956, at *7 (requiring only exclusion of "reasonably likely [alternative] causes").

In addition to Young's opinions that the data he reviewed suggests a design defect, the deposition testimony of Jennings-Moline's surgeon, Dr. Douglas McInnis, supports her defect claims. Dr. McInnis testified during his deposition about Jennings-Moline's revision surgeries and his opinion that the device was "different than all the others" and that "something was inherently amiss." (Dkt. 44-2 at p. 118, ll. 9, 20-21). Regarding the first revision surgery, Dr. McInnis opined the liner's dissociation "represent[ed] either a failure on the part of the surgeon . . . or some as yet not identified defect in the implant" but he went onto conclude his actions did not contribute to the dissociation. (Dkt. 44-2 at p. 103, ll. 4-6, 13-17). As to the second revision surgery, Dr. McInnis opined that because he "was revising a dissociated polyethylene liner for the second time," "[t]hat is presumed evidence of a problem with the shell." (Dkt. 44-2 at p. 113, ll. 2-4).

Viewing this evidence in the light most favorable to Jennings-Moline, a jury could conclude that the device was defective and that other likely causes of injury did not exist. For example, Dr. McInnis testified that he did not surgically error; the lack of an error on his part "means it was either the liner or it was the shell"; and during the first revision surgery, he "looked at the liner and the liner looked bad" and "the shell looked normal." (Dkt. 44-2 at p. 105, ll. 10-13). Additionally, in his expert report, Young opines the data "suggests" a defect "allows the liner to deform or move within the acetabular shell when it is being loaded during normal anticipated use." (Dkt. 46-1 at p. 17). Based Young's admissible expert opinions and Dr. McInnis's deposition testimony, a genuine dispute of material facts exists and precludes summary judgment on Jennings-Moline's defect claims.

At oral argument, Jennings-Moline asserted the malfunction theory discussed in *Black* is inapplicable to this case because, like the electrode pads discussed in *Black*, the AltrX liner is not the type of product permitting the jury to infer, after weighing all the evidence, that "in the normal course of human experience, the injury would not have occurred at this point in the product's life span had there not been a defect attributable to the manufacturer." *Black*, 488 P.3d 1283 at 1288 (quoting *Farmer*, 553 P.3d at 1313). In *Black*, however, "Black [did] not dispute that the burns [she suffered were] a known side effect associated with electronic stimulation therapy and carbon electrode pads." In this case, Defendants do not assert a liner dissociation is a "known side effect" of using the liner.

### 2.    Causation

Defendants also assert Jennings-Moline's defect claim fails for lack of causation. (Dkt. 33-1 at p. 19). Defendants argue that Young does not negate reasonably likely causes of Jennings-Moline's injuries, such as hip dysplasia; Dr. McInnis "could not pinpoint what caused the liner . . . to dissociate"; and Jennings-Moline's experts "must identify the specific cause of the complained-of injury to a reasonable degree of medical certainty." (Dkt. 33-1 at pp. 20-23). None of these arguments, however, are successful.

In support of their argument that the experts must identify the specific cause of the injury "to a reasonable degree of medical certainty," Defendants cite *Grunig*, No. 1:18-cv-00111-BLW, 2019 WL 6868956. *Grunig*, however, does not stand for that proposition. Nowhere in that case does the court conclude an expert must identify the specific cause of an injury to a reasonable degree of medical certainty to prove a product defect claim. Rather, the court in *Grunig* stated the plaintiffs were only required to prove the product "malfunctioned" and to "negate other causes,"

although they "need not exclude every possible cause but only reasonably likely causes." *Id*. at *7.

Dr. McInnis's testimony is that the AltrX liner failed.  For example, he testified that "the failure was a gradual thing, glacial, not able to be ascertained or noted on a day-by-day observation until the thing finally gave and the liner comes out and then it becomes obvious."  (Dkt. 44-2, p. 118, ll. 22-25).  Contrary to Defendants' argument, Dr. McInnis was not required to "pinpoint was caused the liner to fail."  Rather, under the malfunction theory, Jennings-Moline only must show a genuine issue of material fact that the liner failed—or in other words—malfunctioned. *Black*, 488 P.3d at 1287.  Dr. McInnis' testimony that the liner did fail is both undisputed and sufficient to create a factual question precluding summary judgment regarding whether the liner malfunctioned.

Dr. McInnis also testified the AltrX liner's failure was not likely due to his error. Specifically, Dr. McInnis testified that he informed Jennings-Moline "that a technical failure" on his part could explain the dissociation of the liner but that he ultimately concluded a technical failure was not the cause.  (Dkt. 44-2 at pp. 104-05).  This testimony tends to negate Dr. McInnis' conduct as the cause of the AltrX liner's malfunction.

Defendants criticize Young for not addressing Jennings-Moline's hip dysplasia.  (Dkt. 33-1 at p. 23) ("Young does not address Ms. Jennings-Moline's dysplasia of the hip.").  As both Defendants and Young note, however, Young is not a medical doctor and cannot offer opinions that are medical in nature.  In contrast, Defendants do not dispute Dr. McInnis' expertise to offer medical opinions, and he testified that, although Jennings-Moline had hip dysplasia, he would have corrected that condition during surgery, and it would not have affected her hip stability post-operatively.  (Dkt. 44-2 at p. 66) (testifying he would have corrected dysplasia).  This testimony

tends to negate Jennings-Moline's hip dysplasia as the cause of the AltrX liner's failure.  Although Defendants assert Jennings-Moline "does not account for a litany of alternative causes," they do not identify what those purported alternatives are.  Based on Dr. McInnis's testimony, the Court rejects Defendants' arguments that Jennings-Moline has no evidence of medical causation (Dkt. 33-1 at p. 23) and concludes a genuine issue of material fact of causation exists.

### 3.    Negligence Per Se

Defendants assert Jennings-Moline's claim for negligence per se fails because she does not identify a specific statute they allegedly violated.  (Dkt. 33-1 at p. 28).  In response, Jennings-Moline contends her citation to Idaho Code § 6-1401 in her complaint is sufficient to withstand summary judgment on her negligence per se claim.  (Dkt. 44-1 at p. 28).

To show negligence per se under Idaho law, a party must prove:  "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage."  *O'Guin v. Bingham Cnty.*, 122 P.3d 308, 311 (Idaho 2005) (quoting *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 804 P.2d 900, 904-05 (Idaho 1991)).  Idaho statutes and administrative regulations may define the standard of care owed, and violations of statutes or regulations may constitute negligence per se.  *O'Guin*, 122 P.3d at 311. "Establishing negligence per se through a violation of a statute or regulation conclusively establishes the first two elements of a cause of action in negligence."  *Obendorf v. Terra Hug Spray Co.*, 188 P.3d 834, 840 (Idaho 2008).

The Idaho Supreme Court has held that to replace a common law duty of care with a duty of care from a statute or regulation, the following elements must be met:

> (1) [T]he statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury.

*O'Guin*, 122 P.3d at 311.

In this case, Jennings-Moline's reference to Idaho Code § 6-1401 is not sufficient standing alone to withstand a motion for summary judgment. *See Far Out Prods., Inc.*, 247 F.3d at 997 (9th Cir. 2001) (noting non-moving party "must go beyond the pleadings" to foreclose summary judgment). Summary judgment is appropriate where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322; *see also* Fed. R. Civ. P. 56(e) (providing court may grant motion for summary judgment "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact").

Jennings-Moline has not presented evidence of a specific statutory or regulatory violation by Defendants. *See Stem v. Prouty*, 272 P.3d 562, 568 (Idaho 2012) (holding that to survive summary judgment, non-moving party must "be able to show that the violation of the statute or ordinance" proximately caused the party's injuries). Moreover, Jennings-Moline has not made any argument that a statutory or regulatory standard of care should replace the common law duty of care. The Court grants Defendants' motion for summary judgment as to Jennings-Moline's claim of negligence per se.

### 4.   Failure to Warn, Fraud, Breach of Warranty, and Negligent Misrepresentation

Defendants also move for summary judgment on Jennings-Moline's claims for failure to warn, fraud, breach of warranty, and negligent misrepresentation.  (Dkt. 33-1 at pp. 17-18, 24-28).

In her response brief, Jennings-Moline concedes these claims.  (Dkt. 44-1 at p. 29; *see* Dkt. 44-3).

Accordingly, the Court grants summary judgment on these claims.

**V. ORDER**

**IT IS HEREBY ORDERED:**

1.      Defendants' Motion for Summary Judgment (Dkt. 33) is **GRANTED IN PART** as to Jennings-Moline's claims for negligence, negligence per se, failure to warn, fraud, breach of warranty, and negligent misrepresentation; and

2.      Defendants' Motion for Summary Judgment is **DENIED IN PART** as to Jennings-Moline's claim that the AltrX liner was defective.

DATED: November 01, 2023

*Amanda K. Brailsford*

Amanda K. Brailsford
U.S. District Court Judge